UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
VIOLET VIGORITO,

                              Plaintiff,

              -against-

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.
----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
19-CV-115 (JMA)

FILED
CLERK
2:44 pm, Feb 10, 2020
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

    Daniel A. Osborn
    43 West 43rd Street, Suite 131
    New York, NY 10036
        *Attorney for Plaintiff*

    Sean P. Greene
    Richard P. Donoghue, United States Attorney
    Eastern District of New York
    271 Cadman Plaza East, 7th Floor
    Brooklyn, NY 11201
        *Attorneys for Defendant*

**AZRACK, United States District Judge:**

Plaintiff Violet Vigorito ("Plaintiff") seeks review of the November 5, 2018 final administrative decision by the Commissioner of Social Security (the "Commissioner"), reached after a hearing before Administrative Law Judge Benjamin Chaykin ("ALJ Chaykin"), denying her application for disability insurance benefits under Title II of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings. (ECF Nos. 14, 15.) Because ALJ Chaykin's decision was supported by substantial evidence and applied the proper legal standards, Plaintiff's motion for judgment on the pleadings is DENIED, and the Commissioner's cross-motion is GRANTED.

# I. BACKGROUND

## A. Procedural History

In July 2015, Plaintiff filed for disability insurance benefits with the Social Security Administration ("SSA"), alleging disability as of November 1, 2014 due to the following illnesses, injuries, or conditions: back, both hips, high blood pressure, borderline diabetic, pain, numbness, thyroid impairment, irritable bowel syndrome, and reflux disease. (Tr. 58–59, 153.[1]) Following denial of her claim, Plaintiff requested a hearing, which was held before ALJ Chaykin on September 5, 2017. (Tr. 12–24, 30–55.)

In a decision dated January 30, 2018, ALJ Chaykin denied Plaintiff's claim, finding that she was not disabled for purposes of receiving disability insurance benefits because Plaintiff could perform her past relevant work as generally performed. (Tr. 15–24.) ALJ Chaykin's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on November 5, 2018. (Tr. 1–3.) This appeal followed. (ECF No. 1.)

## B. Plaintiff's Background and Testimony

Plaintiff was born on April 20, 1958. (Tr. 35.) She holds an associate degree from a dental assisting program. (Tr. 37.) For twenty-seven years, Plaintiff worked in a dental office until she sustained an injury while lifting a heavy trash bag. (Tr. 37–39.) She testified that she has not worked since November 1, 2014 because she "just couldn't bear it anymore." (Tr. 40.) Although Plaintiff "had initially thought that maybe [her injury] would get better," she explained, "it was actually getting worse." (Id.)

At her hearing, Plaintiff testified that due to pain in her back, hip, buttocks, and leg, she could, at most, stand for fifteen minutes, sit for fifteen to twenty minutes before having to change

---

[1] Citations to "Tr." refer to pages of the certified administrative record filed by the Commissioner. (ECF No. 32.)

2

positions, walk for twenty-five to thirty feet, and lift a coffee cup. (Tr. 41–42.) She said that she no longer participated in any activities outside her home, and her husband and daughter typically performed most housework, with the exceptions of folding some laundry while seated and taking one or two dishes out of the dishwasher. (Tr. 43–44.)

**C.     Vocational Expert Testimony**

Cindy Burnett, a vocational expert ("VE") reviewed Plaintiff's file and listened to her hearing testimony. The VE testified that Plaintiff's past job was equivalent to the Dictionary of Occupational Titles listed job of dental assistant. (Tr. 50.) The VE explained that a hypothetical claimant with the same age, education, and work history as Plaintiff who retained the capacity to perform a full range of light work could perform Plaintiff's past work as generally performed, but not as actually performed. (Id.) Additionally, the VE testified that a hypothetical claimant with the limitations identified as part of Plaintiff's residual functional capacity ("RFC"), discussed further below, could likewise perform Plaintiff's past work as generally performed, but not as actually performed. (Tr. 51.)

**D.     The Commissioner's Decision**

In his January 30, 2018 decision, ALJ Chaykin applied the five-step process outlined in the SSA's regulations, described below, and denied Plaintiff's application for benefits. (Tr. 15–24.) ALJ Chaykin found that Plaintiff had met the insured status requirements of the Act, had not engaged in substantial gainful activity since the alleged onset date, and had the severe impairments of lumbar spine degenerative disc disease, along with related chronic pain disorder, lumbago, and sciatic syndrome. (Tr. 17–18.) However, ALJ Chaykin denied Plaintiff's claim. He explained that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment.

In addition, ALJ Chaykin determined that Plaintiff had the RFC to perform light work subject to the following limitations: not climbing ropes, scaffolds, or ladders; only occasionally climbing ramps or stairs; only occasionally stooping, crouching, balancing, kneeling, and crawling; and not being exposed to dangerous hazards, such as unprotected heights or dangerous machinery. (Tr. 19–20.) Accordingly, Plaintiff was capable of performing her past relevant work as a dental assistant. (Tr. 23.)

As part of this RFC finding, ALJ Chaykin determined that though Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 20–21.) ALJ Chaykin asserted that the RFC was "supported by the findings of multiple independent examiners; the claimant's primary care providers; the claimant's testimony regarding daily activities and functioning; and the record as a whole." (Tr. 23.) ALJ Chaykin also credited the testimony of the VE in finding Plaintiff "able to perform the job of dental assistant as it was generally performed." (Tr. 23–24.) Plaintiff, therefore, was not disabled under the Act. (Id.)

## II. DISCUSSION

### A. Social Security Disability Standard

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled only when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

4

Under the Commissioner's regulations, an ALJ determines disability by following a five-step sequential analysis. See 20 C.F.R. § 404.1520. This analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). At step four, the Commissioner determines a claimant's RFC and then decides if the claimant can continue in his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The claimant bears the burden at the first four steps. At step five, however, the Commissioner must demonstrate that "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

## B. Scope of Review

In reviewing a denial of disability benefits, the Court's function is not to review the record de novo, but to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)). Thus, the Court will not look at the record "in

isolation but rather will view it in light of other evidence that detracts from it." State of N.Y. ex rel. Bodnar v. Sec'y of Health & Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). A reviewing court will affirm an ALJ's decision based on "adequate findings supported by evidence having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

Conversely, a reviewing court will order remand for further proceedings when the Commissioner failed to provide a full and fair hearing, made insufficient findings, or incorrectly applied the applicable laws and regulations. See Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999); see also 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

**C.    Analysis**

Plaintiff advances only one argument in support of remand: that in determining Plaintiff's RFC, ALJ Chaykin erred by failing to give controlling weight to the opinion of one of Plaintiff's treating physicians, her orthopedist Dr. Warwick Green. (See Pl.'s Mem., ECF No. 14–1 at 12.) For the reasons set forth below, the record supports ALJ Chaykin's decision to give "little weight" to Dr. Green's opinion.

**1. ALJ Chaykin's Treatment of Dr. Green's Opinion**

In his decision, ALJ Chaykin comprehensively summarized Plaintiff's treatment history for her injury to date. He explained that the record reflected "fairly conservative care for chronic conditions, such as routine primary care follow ups for medication management," and noted that "[t]he overall evidence is consistent with a light level residual functional capacity finding." (Tr. 22.) As part of his analysis, ALJ Chaykin assessed the opinions of several medical professionals, including Dr. Green, whose documentation of their treatment of Plaintiff is contained in the record.

ALJ Chaykin gave "little weight" to the opinion of Dr. Green, one of Plaintiff's orthopedists, who treated her for approximately three years. Dr. Green completed a functional assessment form, from which ALJ Chaykin quoted extensively. (Tr. 857.) His decision summarized Dr. Green's opinion that Plaintiff

> could frequently lift up to 5 pounds, and occasionally up to 10 pounds, due to a January 2015 MRI of the lumbar spine, and limited range of motion of the lumbar spine, with positive straight leg raise of the right leg. She can stand/walk for two hours, 25 minutes at a time, and sit two hours, 25 minutes at a time. She should never perform postural activities including climb, bend, balance, stoop, crouch, kneel, and crawl. She should never reach, constantly feel/handle, and occasionally push/pull 5-10 pounds. She has environmental limitations in heights, moving machinery, and temperature extremes. (Tr. 23.)

ALJ Chaykin described Dr. Green's opinion as "inconsistent with the overall objective findings in the record, and appears to be primarily based on the claimant's own subjective complaints." (Id.)

Plaintiff's only challenge is to the weight ALJ Chaykin accorded to Dr. Green's opinion. She argues that ALJ Chaykin's "conclusory assertion that Dr. Green's opinion was inconsistent with the overall objective findings in the record is not a 'good reason' for rejecting his opinion." (See Pl.'s Reply Mem., ECF No. 16 at 3.) As explained in further detail below, the Court disagrees.

**2. Applicable Law**

In weighing Dr. Green's opinion, ALJ Chaykin was bound by the "treating physician rule" in effect when Plaintiff filed her application. If a treating physician's opinion regarding the nature and severity of an individual's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, an ALJ will credit that opinion with "controlling weight." 20 C.F.R. § 404.1527(c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). A treating physician's opinion "on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record." Selian v. Astrue,

708 F.3d 409, 418 (2d Cir. 2013). An ALJ must provide "good reasons" for not granting controlling weight to a treating physician's opinion. See Halloran, 362 F.3d at 32–33. When a treating physician's opinion is not given controlling weight, the ALJ should "comprehensively set forth reasons for the weight assigned" to that opinion, considering the factors identified in the SSA regulations. Id.; see also 20 C.F.R. § 404.1527(c). These same factors are considered when evaluating other medical opinion evidence as well.

Among the factors an ALJ must consider are: "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." Burgess, 537 F.3d at 129 (internal quotations and alterations omitted). Even if an ALJ fails to apply these factors "explicitly" in a decision, the ALJ's decision should be affirmed if a reviewing court conducts "a searching review of the record" and finds "that the substance of the treating physician rule was not traversed." Danza v. Comm'r of Soc. Sec., No. 18-cv-6841, 2019 WL 6033097, at *2 (E.D.N.Y. Nov. 14, 2019) (citing Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019)).

### 3. The Record Supports the "Little Weight" ALJ Chaykin Gave Dr. Green's Opinion

Having conducted "a searching review of the record," the Court finds that the record shows that there were "good reasons" not to grant Dr. Green's opinion controlling weight. The record supports the "little weight" ALJ Chaykin accorded to Dr. Green's opinion.[2]

---

[2] Plaintiff also argues that ALJ Chaykin's failure to label Dr. Green explicitly as a "treating physician" in his analysis warrants remand. (Pl.'s Mem., ECF No. 14–1 at 14.) Plaintiff identifies no authority to support this proposition, and the Court has found none. Moreover, ALJ Chaykin's decision cites several of Dr. Green's treatment records, making clear that he was aware Dr. Green personally treated Plaintiff several times. (Tr. 23.)

8

Plaintiff argues that "[t]he ALJ's decision contains no evaluation of whether Dr. Green's opinion was supported by medically acceptable clinical and laboratory diagnostic techniques . . . or was inconsistent with other substantial evidence in the record." (Pl.'s Mem., ECF No. 14–1 at 15.) Earlier in his decision, however, ALJ Chaykin outlined in detail the objective findings in the record that provided the necessary support and context for his determination that Dr. Green's opinion was "inconsistent with the overall objective findings in the record, and appears to be primarily based on the claimant's own subjective complaints." (Tr. 23.)

First, ALJ Chaykin summarized records of Plaintiff's treatment by multiple providers from shortly after her injury in December 2014 to only a few months before her hearing in July 2017. (Tr. 21–22.) He explained that Plaintiff's "[o]rthopedic evaluations consistently showed mostly mild findings throughout the relevant period, with some limitations in range of motion, but little to no tenderness over the lumbar spine, and generally normal gait." (Tr. 21.) ALJ Chaykin described in detail the consistently "normal" findings of Plaintiff's physical examinations over time, including:

- "normal appearance and posture, with exaggerated limp" and "[s]ome limitations in range of motion were noted, though suboptimal effort was noted" in March 2015;

- "normal gait stride and cadence, no assistive devices, and no orthotic devices" and "[s]ome limitations were noted in lumbar spine range of motion, but muscle strength of the bilateral hips, knees, and ankles were 5/5, with negative straight leg raise bilaterally" in October 2015;

- "Physical examination showed negative straight leg raise, and she could heel/toe walk. Mild disk bulges were shown on the most recent MRI, with no herniations

- and basically no stenosis. Impression was of lower back pain and generalized aching and pain without specific diagnoses" in June 2017;
- and "[n]o spasm or tenderness over the lumbar spine and sciatic nerve, but had limited range of motion in the thoracic and lumbar spines at the extremes of flexion and extension. Motor exam showed 5/5 muscle strength throughout the lower extremities. Numbness and tingling were noted in the right leg" in July 2017. (Tr. 21–22.)

These objective orthopedic evaluations support ALJ Chaykin's decision to accord Dr. Green's more restrictive opinion "little weight."

Additionally, Dr. Green's own treatment records from Plaintiff's seven visits over three years support ALJ Chaykin's characterization of Dr. Green's opinion as "inconsistent with the overall objective findings in the record" and that it "appears to be primarily based on the claimant's own subjective complaints." (Tr. 23.) Dr. Green's records describe nearly the same physical examination results during each of Plaintiff's visits: tenderness in Plaintiff's midline posteriorly, back flexion of forty-five degrees, zero extension, lateral flexion of five degrees in either direction, no "neurological deficits" in Plaintiff's lower extremities, equal reflexes, and straight leg raising that was either ninety degrees bilaterally or ninety degrees on the left and eighty degrees on the right. (Tr. 237, 239, 241, 583, 585, 587, 589.) On each visit, Plaintiff's prognosis was "fair," except during her most recent visit on May 8, 2017 when it was "guarded." (Id.) Because Dr. Green's treatment records differ from the more restrictive opinion he offered on the functional assessment form, the record supports ALJ Chaykin's decision not to give Dr. Green's opinion controlling weight and, instead, to accord it only "little weight." Indeed, "the Second Circuit has

often held that ALJs can disagree with doctors' medical opinions when they differ from treatment notes." Wider v. Colvin, 245 F. Supp. 3d 381, 390 (E.D.N.Y. 2017).

Further, the records of Dr. Green's treatment of Plaintiff support ALJ Chaykin's determination that Plaintiff's condition "appears to have been managed mostly conservatively, with no surgery indicated." (Tr. 22.) Over the course of Plaintiff's many visits to Dr. Green, his treatment plan remained limited and included referrals for physical therapy and epidural steroid injections. Although the injections were ultimately unsuccessful, Plaintiff only pursued physical therapy on three or four occasions and then abandoned it after concluding that it was not benefitting her. (Tr. 21, 254, 591.) Plaintiff also received several prescriptions for pain relief, including Etodolac, Lidoderm, Ultracet, and Flexeril as well as over the counter medication. (Id.) Dr. Marc Chernoff, an orthopedic spinal surgeon Dr. Green consulted, wrote in a February 6, 2015 letter to Dr. Green that "[a]t present I don't see any surgical indications." (Tr. 247.) Although Dr. Green referred Plaintiff for subsequent spine surgery evaluations, the record does not show she was recommended for or underwent any such surgery. (Tr. 585, 588.) ALJ Chaykin was permitted to consider conservative treatment as evidence of non-disability because it was accompanied by other substantial evidence in the record. See Danza, 2019 WL 6033097, at *3.

Plaintiff attempts to rebut the "little weight" ALJ Chaykin gave to Dr. Green's opinion by pointing to several "objective findings in the record" that she says show that Dr. Green's opinion was objective and not based on Plaintiff's subjective complaints. (Pl.'s Mem., ECF No. 14–1 at 13.) First, she details the findings of a January 9, 2015 MRI on the lumbar spine that revealed "multilevel degenerative changes, worse at L4-5," "central annular tear at L4-5 with a very small subligamentous central disc herniation at L4-5 as well as some mild stenosis at L4-5," and a "tiny annual tear with a very small disc protrusion at T12-L1." (Tr. 247.) As ALJ Chaykin recounted,

the MRI report showed "multilevel mild degenerative changes" on the lumbar spine. (Tr. 21.) The MRI results do not undermine ALJ Chaykin's decision to not accord Dr. Green's opinion controlling weight and, instead, to give it "little weight."

Next, Plaintiff argues that the treatment notes of other orthopedists who treated Plaintiff, Dr. Cheryl Daves and Dr. Marc Chernoff, and the physician who performed Plaintiff's independent physical examination, Dr. Jeffrey Perry, constitute objective evidence that would have supported giving Dr. Green's opinion controlling weight. (Pl.'s Mem., ECF No. 14–1 at 13–14.) Ultimately, however, these records support ALJ Chaykin's conclusion that Plaintiff's condition was mild and only required conservative treatment. (Tr. 22.) Dr. Daves, for example, noted that Plaintiff complained of pain at the extremes of flexion and extension with numbness and tingling in her right leg. (Tr. 850–51.) Her prescribed treatment was conservative: Gabapentin, Neurontin, home exercises, stretching, and physical therapy. (Tr. 851.) Similarly, Dr. Chernoff diagnosed Plaintiff with restricted lumbar flexion with lower back pain and painful extension. (Tr. 247.) His treatment plan noted that "[s]he can try a lumbar corset and if pain continues epidural steroid injections may also be beneficial." (Id.) He also "recommend[ed] a pain management evaluation," but noted that "[a]t present I don't see any surgical indications." (Id.) Likewise, Dr. Perry found that Plaintiff's flexion, extension, and rotation were below normal, but opined that "she is able to work as she presents with a mild to moderate disability." (Tr. 576–79.)

In considering the records of each of these physicians, ALJ Chaykin had ample objective support from the record to conclude that there were "mostly mild findings" regarding the limitations caused by Plaintiff's injury. His decision to accord "little weight" to Dr. Green's more restrictive opinion, even though Dr. Green was a treating physician, must be affirmed.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for judgment on the pleadings and GRANTS the Commissioner's cross-motion. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

**SO ORDERED.**

Dated: February 10, 2020
Central Islip, New York

                                           /s/ (JMA)
                                      JOAN M. AZRACK
                                      UNITED STATES DISTRICT JUDGE